UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**UNITED STATES OF AMERICA**,	Criminal Case No. 3:10-CR-00475-KI

    Plaintiff,

               v.	OPINION AND ORDER

**MOHAMED OSMAN MOHAMUD,**

    Defendant.

    S. Amanda Marshall
    United States Attorney
    District of Oregon
    Ethan D. Knight
    Pamala R. Holsinger
    Jolie F. Zimmerman
    Assistant United States Attorneys
    1000 S.W. Third Avenue, Suite 600
    Portland, Oregon  97204

        Attorneys for Plaintiff

        Stephen R. Sady
        Chief Deputy Federal Public Defender
        Steven T. Wax
        Federal Public Defender
        Ellen C. Pitcher
        Assistant Federal Public Defender
        101 SW Main Street, Suite 1700
        Portland, Oregon  97204

              Attorneys for Defendant

KING, Judge:

Defendant Mohamed Osman Mohamud is charged with attempting to use a weapon of mass destruction, specifically a destructive device or explosive bomb, against a person or property within the United States, in violation of 18 U.S.C. § 2332a(a)(2)(A).  Before the court is defendant's Motion for CIPA Rulings and Disclosures [143].  This opinion discusses some of the general concerns raised by Mohamud and explains the standards the court is following.  I will soon file several public orders explaining the court's previous CIPA rulings.  These orders have less specificity than Mohamud requests but should be specific enough to allow Mohamud to appeal them, if necessary.

**DISCUSSION**

I.    <u>The Necessity of Public Orders</u>

As background, the government explains that on April 18, 2011 and a few later dates, it moved ex parte and in camera for rulings that certain classified materials potentially discoverable by Mohamud either fail to meet the standard for disclosure because they are not relevant and helpful to the defense or are otherwise subject to deletion or substitution under Section 4 of the

Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. III. § 4. The court ruled on the motions ex parte by filing classified orders but did not file any public orders.

Mohamud asks the court to enter public orders addressing any of the court's prior or future rulings on the production of classified material. He asks the orders to be as broad and specific as possible, consistent with the need to avoid unnecessary disclosure of classified information, in the event appellate review is required. Additionally, Mohamud asks the court to include five elements: (1) a written order encompassing the correct standard for determining if information constitutes Brady material, including that doubts should be resolved in favor of disclosure; (2) the government should produce Brady material immediately and not when the government deems it to be in time for effective use at trial; (3) the government has a duty to learn of favorable evidence; (4) all government material should be reviewed under the correct Brady standard; and (5) the Brady obligation is continuing and the government should produce new Brady material as soon as it is discovered.

The government does not oppose the public filing of orders reflecting the fact of and the ultimate basis for the court's rulings on the government's prior or future motions to delete or substitute discovery under CIPA. The government does oppose Mohamud's request for considerable specificity in the orders. Instead, the government intends to suggest rulings in generic terms, such as by indicating the court found certain information is discoverable notwithstanding the government's privilege, but defendant's need for the information will be satisfied by the production of redacted or substituted materials.

The court has been remiss in failing to file public orders reflecting, as much as possible, the rulings on the production of classified material. United States v. Gurolla, 333 F.3d 944, 951 n.7

(9th Cir. 2003) ("it is essential that the prosecution and the defense, and especially the latter, be advised that the district court has made a ruling protecting classified information from disclosure, so that the order may be challenged on appeal"). The court will file orders for the prior rulings and any future rulings made in the case. The issue, then, is what can be disclosed in the public rulings and who will draft the orders.

The government submitted proposed unclassified orders relating to the prior CIPA rulings. Mohamud objects to the court entering an order drafted by the government. He argues the court must carefully write the orders to accurately reflect, to the extent permissible, what the court reviewed, the substance of the discovery rulings, and the information to which the rulings apply.

I am concerned about the inadvertent disclosure of classified information and appreciate the government's proposed orders as examples of what information can be made public. I intend to use some of the language but will edit the orders to address some of the specific objections Mohamud made to them.

Mohamud objects that the proposed orders should include the dates of production and be easily correlated with the notification of CIPA filings. I agree this will make the record more understandable and will make these changes. Mohamud also objects to providing rulings for two motions in one order, but the government proposed this to more easily handle associated motions.

Mohamud objects to statements in the proposed orders which make factual findings on whether the government has conducted a thorough review of the classified information and has fully complied with any discovery obligations. I will limit findings to those items of which I have personal knowledge.

Mohamud makes other requests which I cannot accommodate because to do so would provide too much information about the classified material. These requests include providing a general description of the material reviewed, the number of pages reviewed, and a correlation to any summaries or substitutions produced as a result of the ruling. Mohamud also asks for the defense team members who possess security clearances to play a role in determining the adequacy of any summaries or substitutions. CIPA, however, expressly provides for the government to make such requests ex parte. 18 U.S.C. app. III. § 4.

II.     Standards for Discovery

I will also address some other disputes about the discovery in this case.

The parties dispute the standard concerning the disclosure of exculpatory evidence. The government cites Youngblood v. West Virginia, 547 U.S. 867, 126 S. Ct. 2188 (2006), for its statement that evidence is material under Brady "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 870 (internal quotation omitted). In Youngblood, the Court was analyzing whether a Brady violation had occurred.

As I stated in court on April 17, 2012, I would use the pretrial standard as explained in United States v. Price, 566 F.3d 900, 913 n.14 (9th Cir. 2009) (quoting United States v. Acosta, 357 F.Supp.2d 1228, 1239-40 (D. Nev. 2005)):

> [T]he 'materiality' standard usually associated with *Brady* . . . should not be applied to pretrial discovery of exculpatory materials. . . . [J]ust because a prosecutor's failure to disclose evidence does not violate a defendant's due process rights does not mean that the failure to disclose is proper. . . . [T]he absence of prejudice to the defendant does not *condone* the prosecutor's suppression of exculpatory evidence . . . . [Rather,] the proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable

> to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses. . . . [I]f doubt exists, it should be resolved in favor of the defendant and full disclosure made. . . . [T]he government [should therefore] disclose all evidence relating to guilt or punishment which might reasonably be considered favorable to the defendant's case, even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence.

Mohamud is concerned the government may not have followed this standard when reviewing classified discovery prior to my ruling. The government states it has been complying with this broader discovery obligation. I accept the government's representation.

There is also a dispute on the correct standard to be used for the disclosure of classified information. Mohamud contends if the classified information is relevant and helpful to the defense, the court must order its disclosure in redacted, summary, or stipulated facts form. According to Mohamud, national security concerns do not allow the government to completely withhold the substance of the discovery from the defendant.

The government reads the cases as first requiring the court to determine if the classified information is relevant and helpful to the defense. If so, the court must then balance the public interest against the defendant's right to prepare his defense. According to the government, overriding national security concerns may outweigh the defendant's need for the classified information–at least in its original form–even if the information is relevant and helpful to the defense.

CIPA creates a pretrial procedure for ruling on the admissibility of classified information. United States v. Klimavicius-Viloria, 144 F.3d 1249, 1260 (9th Cir. 1998). The government must first formally claim that the state secret privilege protects the information. Id. at 1261. As shown

in Klimavicius, Courts then use the test first explained in Roviaro v. United States, 353 U.S. 53, 77 S. Ct. 623 (1957):

> In order to determine whether the government must disclose classified information, the court must determine whether the information is "relevant and helpful to the defense of an accused." Yunis, 867 F.2d at 623 (quoting Roviaro v. United States, 353 U.S. 53, 60–61, 77 S. Ct. 623, 1 L. Ed.2 d 639 (1957)); see also Pringle, 751 F.2d at 428; cf. Sarkissian, 841 F.2d at 965 (the court can engage in balancing). Under this test, information meets the standard for disclosure "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985).

Klimavicius, 144 F.3d at 1261.

Other courts have adopted a lower standard for disclosure:

> If the evidence is discoverable but the information is privileged, the court must next decide whether the information is helpful or material to the defense, i.e., useful "to counter the government's case or to bolster a defense." United States v. Stevens, 985 F.2d 1175, 1180 (2d Cir.1993) (interpreting materiality standard under Federal Rule of Criminal Procedure 16(a)(1)). To be helpful or material to the defense, evidence need not rise to the level that would trigger the Government's obligation under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), to disclose exculpatory information. See id. at 87, 83 S. Ct. 1194. "[I]nformation can be helpful without being 'favorable' in the Brady sense." Mejia, 448 F.3d at 457 [United States v. Mejia, 448 F.3d 436 (D.C. Cir. 2006)].

United States v. Aref, 533 F.3d 72, 80 (2nd Cir. 2008).

The Aref standard is more in line with the pretrial discovery standard explained in Price. As I explained above, we are following the Price standard here.

If a document meets the standard for disclosure but no substitution is adequate, the court can then balance the defendant's interests in preparing a defense against the national security interest. As explained in United States v. Sarkissian, 841 F.2d 959, 965 (9th Cir. 1988):

> Defendants argue that CIPA forbids balancing national security concerns against defendant's need for documents. Their argument is meritless. Congress

intended section 4 [of CIPA] to clarify the court's powers under Fed. R. Crim. P. 16(d)(1) to deny or restrict discovery in order to protect national security. S. Rep. No. 823, 96th Cong., 2d Sess. 6, reprinted in 1980 U.S. Code and Cong. News 4299-4300. On issues of discovery, the court can engage in balancing. Id. See also United States v. Pringle, 751 F.2d 419, 426-27 (1st Cir. 1984).

Roviaro approved balancing the various interests in the context of whether to identify a confidential informant. The Court stated the following:

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

Roviaro, 353 U.S. at 62.

The Ninth Circuit follows Roviaro in the CIPA context as well. Klimavicius, 144 F.3d at 1261. Thus, I agree with the government that national security interests can outweigh a defendant's need for classified information. I am making all efforts, however, to provide as much information to the defense as possible and am well aware of CIPA's use of redacted, summary, and stipulated forms of information.

## CONCLUSION

Defendant's Motion for CIPA Rulings and Disclosures [143] is granted in part.

IT IS SO ORDERED.

Dated this ____2nd____ day of October, 2012.

                                                 /s/ Garr M. King
                                                 Garr M. King
                                                 United States District Judge